

**SIGNED this 12th day of May, 2014**

                                                    Shelley D. Rucker
                                      UNITED STATES BANKRUPTCY JUDGE

_____

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF TENNESSEE
# SOUTHERN DIVISION

In re:

GREGORY LEE TAYLOR                                       No. 12-12128
                                                           Chapter 7

        Debtors;

GREGORY LEE TAYLOR,

        Plaintiff,

v.
                                                          Adversary Proceeding
                                                          No. 13-1092

COMMISSIONER OF THE INTERNAL
REVENUE SERVICE & THE UNITED
STATES OF AMERICA, through its agency,
the Internal Revenue Service

        Defendants.

*Appearances for the Debtor Gregory Lee Taylor*

    Harry W. Miller, III
    Law Office W. Thomas Bible, Jr.
    6918 Shallowford Road
    Suite 100
    Chattanooga, TN 37421

*Appearances for the Commissioner of the Internal Revenue Service*

    Christopher Sanders
    United States Department of Justice
    555 4th Street, NW
    Washington, D.C. 20001

## MEMORANDUM

The plaintiff debtor Gregory Lee Taylor ("Plaintiff" or "Debtor") has filed this adversary proceeding against the defendant Commissioner of the Internal Revenue Service and the United States of America, through its agency the Internal Revenue Service (collectively "IRS") seeking a declaratory judgment pursuant to 11 U.S.C. § 507(a)(8)(A)(ii) to determine the amount of taxes owed for 2007 and 2008. *See* [Doc. No. 1, Complaint].[1] The IRS moves for summary judgment pursuant to Fed. R. Civ. P. 56, incorporated into adversary proceedings by Fed. R. Bankr. P. 7056 on the issue of dischargeability of the taxes assessed on December 5, 2008 and the taxes assessed on September 12, 2007. [Doc. No. 19]. The Debtor opposes the motion for summary judgment. [Doc. No. 20].

The court has reviewed the motion, the briefing of the parties, the record, and the applicable law and now makes the following findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052. For the reasons explained *infra*, the court determines that the Defendant's motion for summary judgment will be GRANTED in part and DENIED in

---

[1] All docket entry reference numbers refer to docket entries for Adversary Proceeding No. 13-1092, unless otherwise noted.

part.

### I. Background

The Debtor filed his Chapter 7 voluntary bankruptcy petition on April 26, 2012. [Bankr. Case No. 12-12128, Doc. No. 1]. On August 3, 2012 this court entered an order discharging the Debtor. [Bankr. Case No. 12-12128, Doc. No. 28]. On February 4, 2013 the trustee filed a Notice of Need to File Proof of Claim due to Recovery or Anticipated Recovery of Assets indicating a deadline of May 6, 2013 for filing proofs of claim. [Bankr. Case No. 12-12128, Doc. No. 34].

#### A. IRS's Proofs of Claim

#### 1. Proof of Claim 7-1

On March 13, 2013 the IRS filed Proof of Claim 7-1 in the Debtor's bankruptcy case. Proof of Claim 7-1 asserts that the Debtor owed $58,378.60 as of the date of the filing of the bankruptcy case. [Bankr. Case No. 12-12128, Claim No. 7-1]. The claim asserts that the amount owed is due to taxes or penalties owed pursuant to 11 U.S.C. § 507(a)(8). Attached to Proof of Claim 7-1 is a Form 10 Attachment of Proof of Claim for Internal Revenue Taxes. Proof of Claim 7-1 and the Form 10 Attachment outline the following alleged taxes owed:

**Unsecured Priority Claims**

| Kind of Tax | Tax Period | Date Assessed | Tax Due | Interest to Petition Date |
| --- | --- | --- | --- | --- |
| Income | 12/31/2007 | 9/12/2011 | $18,008.00 | $3,961.91 |
| Income | 12/31/2008 | 7/18/2011 | $0.00 | $985.89 |
| Income | 12/31/2008 | 12/5/2011 | $1,937.00 | $1,508.62 |
| Income | 12/31/2009 | 7/18/2011 | $17,582.00 | $1,344.44 |
| Total: | | | $37,527.00 | $7,800.86 |

**Total Amount of Secured Claims:**          $45,327.86

3

**Unsecured General Claims**

Penalty to Date of Petition on unsecured priority claims (including interest thereon):

$13,050.74

[Bankr. Case No. 12-12128, Claim 7-1, p. 3].

2. **Proof of Claim 7-2**

The IRS filed Proof of Claim 7-2 on July 23, 2013 amending its Proof of Claim 7-1. [Bankr. Case No. 12-12128, Proof of Claim 7-2]. Proof of Claim 7-2 states a claim in the amount of $36,288.60 as taxes or penalties owed pursuant to 11 U.S.C. § 507(a)(8). Attached to Proof of Claim 7-2 is a Form 10 Attachment Proof of Claim for Internal Revenue Taxes. This Form 10 also contains a table outlining the tax and penalty liabilities that the IRS alleges the Debtor owes:

Amendment No. 1 to Proof of Claim Dated 3/12/2013 . . . .

**Unsecured Priority Claims**

| Kind of Tax | Tax Period | Date Assessed | Tax Due | Interest to Petition Date |
|---|---|---|---|---|
| Income | 12/31/2007 | 9/12/2011 | $0.00 | $3,961.91 |
| Income | 12/31/2008 | 7/18/2011 | $0.00 | $985.89 |
| Income | 12/31/2008 | 12/05/2011 | $1,937.00 | $1,508.62 |
| Income | 12/31/2009 | 7/18/2011 | $17,582.00 | $1,344.44 |
| **Total:** | | | **$19,519.00** | **$7,800.86** |

**Total Amount of Secured Claims:**        **$27,319.86**

**Unsecured General Claims**

Penalty to Date of Petition on unsecured priority claims (including interest thereon):

$8,968.74

[Bankr. Case No. 12-12128, Claim 7-2, p. 3].

### 3. Proof of Claim 7-3

Proof of Claim 7-3 again amends the IRS's original proof of claim. The IRS filed this proof of claim on August 15, 2013. [Bankr. Case No. 12-12128, Proof of Claim 7-3, p. 2]. This Proof of Claim asserts the following taxes owed:

Amendment No. 2 to Proof of Claim Dated 3/12/2013 . . . .

**Unsecured Priority Claims**

| Kind of Tax | Tax Period | Date Assessed | Tax Due | Interest to Petition Date |
|---|---|---|---|---|
| Income | 12/31/2007 | 9/12/2011 | $0.00 | $3,961.91 |
| Income | 12/31/2008 | 12/05/2011 | $1,937.00 | $1,508.62 |
| Income | 12/31/2009 | 7/18/2011 | $17,582.00 | $1,344.44 |
| **Total:** | | | **$19,519.00** | **$6,814.97** |

**Total Amount of Secured Claims:**    $26,333.97

**Unsecured General Claims**

| Kind of Tax | Tax Period | Date Assessed | Tax Due | Interest to Petition Date |
|---|---|---|---|---|
| Income | 12/31/2008 | 7/18/2011 | $0.00 | $985.89 |

Penalty to Date of Petition on unsecured priority claims (including interest thereon):

$8,968.74

**Total Amount of Unsecured General Claims:** $9,954.63

[Bankr. Case No. 12-12128, Claim 7-3, p. 3].

### B. The Debtor's Contentions

On July 17, 2013 the Debtor filed the Complaint against the IRS in this adversary proceeding seeking a declaratory judgment pursuant to 11 U.S.C. § 507(a)(8)(A)(ii) and seeking

5

a determination of discharge for his 2007 and 2008 income taxes. [Doc. No. 1, Complaint]. In his Complaint the Debtor alleges that around May 23, 2011 he entered into a "4549 Income Tax Discrepancy Adjustments (Consent to Assessment and Collection) with the Defendant" which consented to the immediate assessment of his 2007 1040 Personal Income Taxes. Complaint, ¶ 6. He further admits that he signed the Form 870 2007 Waiver on June 6, 2011 that also consented to such an immediate assessment of taxes. *Id.* at ¶ 7. The Debtor contends that the:

> Defendant negligently waited 111 days after the signing of the 4549 and 98 days after signing the 870 before assessing the 2007 1040 Personal Income Taxes against the Debtor.
> The Debtor relied upon the Defendant to immediately assess his 2007 1040 Personal Income Taxes pursuant to the 4549 to his detriment.
> On or about a Notice Date of May 27, 2013 the Defendant applied $20,090.00 of the Debtor's 2012 1040 Personal Income Tax refund toward a balance that was assessed on September 12, 2011 against the Debtor for the 2007 1040 Personal Taxes.
> On or about a Notice Date of November 12, 2012 the Defendant applied $10,758.00 of the Debtor's $2012^{2}$ 1040 Personal Income Tax refund toward a balance that was assessed $7,829.00 on July 18, 2011 and $4,475.00 on December 5, 2011 against the Debtor for the 2008 1040 Personal Taxes.
> The Defendant has issued a Lien upon the employer of the Debtor.

Complaint, ¶¶ 8-12. The Debtor asserts that the IRS was negligent in assessing his 2007 and 2008 income taxes and that the 2007 taxes and a portion of the 2008 taxes were discharged pursuant to 11 U.S.C. § 727(b). He claims that the IRS's application of the 2011 and 2012 tax refunds against the 2007 and 2008 tax liabilities and the filing of the tax lien violate the discharge order. He further asserts that 11 U.S.C. § 507(a)(8)(A)(ii) sets forth a 240-day rule as it relates to the discharge of a priority claim and the discharge exception.

    **C.**    **The Debtor's 2007 Taxes**

The IRS has filed a number of exhibits in support of its motion for summary judgment. Exhibit Number 1 is a document labeled "Account Transcript" of the Internal Revenue Service.

---

[2] The record reveals that this credit may be from the Debtor's 2011 1040 income tax refund. *See* [Doc. No. 19, Ex. No. 8].

[Doc. No. 19, Ex. 1]. The document relates to the tax period ending December 31, 2007 and contains transaction summaries beginning with September 1, 2008, the day the Debtor's 2007 tax return was filed, and ending September 2, 2013. *Id.* Exhibit 2 is an IRS Form 872 entitled "Consent to Extend the Time to Assess Tax" relating to Debtor's 2007 income taxes. [Doc. No. 19, Ex. 2].

The transaction report indicates that the Debtor had a 2007 adjusted gross income of $138,484 with taxable income of $102,079. His W-2 or 1099 withholding was in the amount of $13,188.00 as of April 15, 2008. [Doc. No. 19, Ex. 2]. The Debtor received an extension of time to file his tax return, and the transcript indicates he filed it on September 1, 2008. On September 1, 2008 the IRS issued the Debtor a refund in the amount of $14,365, and on September 8, 2008 the agency indicated a tax relief credit and another credit to the Debtor in the total amount of $1,200. The IRS issued another refund in the amount of $1,200 on that same date. The IRS flagged Debtor's tax return for examination on December 24, 2008, and a representative was appointed on July 28, 2010. *Id.*

On March 9, 2011 the Debtor signed IRS Form 872, "Consent to Extend Time to Assess Tax," indicating that the Debtor agreed that his income tax could be assessed any time before April 15, 2012. [Doc. No. 19, Ex. 2]. The transaction account indicates that on September 12, 2011 the IRS assessed a miscellaneous penalty under the Internal Revenue Code ("I.R.C.") § 6662(c), (d), (e), (f), (g), or (h) in the amount of $4,503.00 as an accuracy related penalty. On the same date the IRS assessed an additional tax of $21,338.00. [Doc. No. 19, Ex. 1]. The agency further assessed $3,627.00 as interest charged due to late payment. *Id.* The transaction report notes the date of the Debtor's filing of his bankruptcy petition and indicates that the IRS placed a lien on the Debtor's assets on March 15, 2013 due to a balance owed and issued a notice to the

7

Debtor of such lien on March 21, 2013. *Id.* The transaction report further indicates that on April 15, 2013 the IRS transferred a credit of $20,090 in from the Debtor's 2012 1040 tax refund. The record indicates that the parties entered into an installment agreement on May 17, 2013 with the Debtor making some payments to the IRS until September 2, 2013 when the report indicates that the parties were no longer in "installment agreement status."

The IRS has also filed a Form 870 entitled "Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment" ("2007 Waiver"). [Doc. No. 19, Ex. No. 3]. The 2007 Waiver indicates a tax of $22,515.00 and penalties under the I.R.C. § 6662(a) of $4,503.00 for the year ending in 2007. The Debtor signed the 2007 Waiver on June 6, 2011, indicating the following:

> I consent to the immediate assessment and collection of any deficiencies (*increase in tax and penalties*) and accept any overassessment (*decrease in tax and penalties*) shown above, plus any interest provided by law. I understand that by signing this waiver, I will not be able to contest these years in the United States Tax Court, unless additional deficiencies are determined for these years.

[Doc. No. 19, Ex. No. 3].

### D.   The Debtor's 2008 Taxes

The IRS has also provided an "Account Transcript" relating to the Debtor's 2008 tax year. [Doc. No. 19, Ex. 4]. In addition, the IRS has provided another Form 872, "Consent to Extend the Time to Assess Tax" indicating that the Debtor agreed to allow the IRS to assess taxes on his 2008 income any time on or before April 15, 2013. [Doc. No. 19, Ex. 5]. The Debtor signed the consent form on June 6, 2011. *Id.*

The 2008 Account Transcript indicates that the Debtor had a 2008 adjusted gross income of $106,448.00 with a taxable income of $70,282.00. [Doc. No. 19, Ex. 4]. The transcript indicates that the Debtor filed his 2008 tax return on March 9, 2009 showing no taxes owed. His

8

W-2 or 1099 withholding was $13,547 with a credit provided to his account on April 15, 2009 in the amount of $491.00. The IRS issued a refund in the amount of $14,038.00 on March 9, 2009. However, in the summer of 2010, the IRS appointed a representative to examine the tax return. On June 6, 2011 the Debtor consented to providing the IRS with additional time through April 15, 2013 to assess his 2008 tax amount owed. [Doc. No. 19, Ex. 5]. On July 18, 2011 the IRS assessed the following additional taxes and penalties: $1,664.00 for miscellaneous penalty under I.R.C. § 6662(c), (d), (e), (f), (g), or (h); $7,829 in additional taxes; and $914.18 for interest charged for late payment. [Doc. No. 19, Ex. No. 4]. On December 5, 2011 the IRS assessed an additional tax of $4,475.00, plus additional interest of $615.54 and a penalty of $232.36. *Id.* The transcript notes that the Debtor filed bankruptcy on April 26, 2012. It further notes that on April 15, 2012 the Debtor received a 2011 1040 tax refund credit in the amount of $10,758.00 with a further penalty adjustment in the amount of $1,664.00. *Id.* In August of 2013, the IRS transferred two credits based on the Debtor's 1040 in the amounts of $1,722.85 and $1,000.00 respectively. *Id.* It transferred another credit of $140.28 out on September 9, 2013. *Id.*

The IRS has also provided a Form 870 "Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment" ("2008/2009 Waiver") relating to the Debtor's 2008 and 2009 taxes. [Doc. No. 19, Ex. No. 6]. Again, the Debtor consented to the "immediate assessment and collection of any deficiencies . . ." by his signature dated June 6, 2011. The 2008/2009 Waiver indicates 2008 taxes in the amount of $8,320 and penalties in the amount of $1,664. It indicates 2009 taxes in the amount of $18,682 and penalties of $3,736.40. *Id.* The IRS has provided another Form 870 that appears to relate to the years 2008 and 2009 with adjusted taxes and penalties noted. [Doc. No. 19, Ex. 7]. The Debtor consented to these tax amounts by signing the "Consent to Assessment and Collection" provision on October

9

1, 2011. *Id.* The adjusted amounts are $4,475.00 for 2008 taxes with no penalty amounts and a credit in 2009 for $900.00 in taxes and $180.00 for penalties. *Id.*

### E. Debtor's 2009 Taxes

Exhibit 10 is the Account Transcript for the Debtor's 2009 tax year. [Doc. No. 19, Ex. 10]. The transcript lists an account balance of $17,848.39 with additional accrued interest of $1,585.62 and accrued penalty of $2,700.34 as of March 17, 2014. *Id.* The Debtor's adjusted gross income was $108,145 with taxable income of $83,468. The Debtor reflected no taxes were due per the return. The 2009 transcript indicates that the Debtor filed his tax return on March 29, 2010 with W-2 or 1099 withholdings in the amount of $11,883. *Id.* He received additional credits in the amounts of $400, $1,525, and $899 and received a total refund of $14,707.00. *Id.* In July and September of 2010, the IRS appointed a representative and opened an examination of the tax return. It imposed a penalty in the amount of $3,556.40 on July 18, 2011 and removed the three credits allowed in April of 2010. It further assessed a tax in the amount of $15,858 on July 18, 2011 along with interest of $1,093.25. *Id.* A prior tax abatement of $900 was provided on December 5, 2011, with interest of $250.30 and an additional penalty of $470.71 *Id.* On September 9, 2013 the IRS transferred in a 1040 credit in the amount of $140.28. In addition, it appears that the Debtor made five payments of $1,000 each from October 15, 2013 to February 18, 2014 towards this tax liability. *Id.*

### F. The Debtor's 2011 Taxes

The next tax year for which the IRS provides account information is the 2011 tax year.[3] [Doc. No. 19-8, Ex. 8]. The Debtor's 2011 adjusted gross income was $87,122 with a taxable income of $61,616. The Debtor filed his 2011 tax return on November 12, 2012 with a tax amount due of $8,816. The Debtor's W-2 or 1099 withholding amount on April 15, 2012 was

---

[3] No transcript was provided for 2010.

$19,574. *Id.* The transcript indicates that $10,758 was transferred out as a credit to be applied to prior tax amounts due on April 15, 2012. *Id.* This credit was originally applied to the Debtor's 2008 liabilities.

### G. The Debtor's 2012 Taxes

The IRS's Exhibit 9 is an Account Transcript for the Debtor's tax year ending December 31, 2012. [Doc. No. 19-9, Ex. 9]. The Debtor's adjusted gross income was $30,145 with taxable income of $10,045 that year. No taxes were due according to his return. The Debtor filed his tax return on May 27, 2013 and his W-2 or 1099 withholding amount was $18,038 on April 15, 2013. After two additional credits to his account, the IRS issued a credit transfer in the amount of $20,090 "out to 1040" 2007 on April 15, 2013. *Id.*

### II. Standard of Review

Federal Rule of Bankruptcy Procedure 7056 makes Federal Rule of Civil Procedure 56 applicable to bankruptcy adversary proceedings. *See* Fed. R. Bank. P. 7056. Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The burden is on the moving party to show conclusively that no genuine issue of material fact exists, and the Court must view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.*, 105 F.3d 279, 280-81 (6th Cir. 1997); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *Kava v. Peters*, No. 09-2327, 2011 WL 6091350, at *3 (6th Cir. Dec. 7, 2011).

Once the moving party presents evidence sufficient to support a motion under Fed. R. Civ. P. 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The

nonmoving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *60 Ivy Street*, 822 F.2d at 1435. The moving party is entitled to summary judgment if the nonmoving party fails to make a sufficient showing on an essential element of the nonmoving party's case with respect to which the nonmoving party has the burden of proof. *Celotex*, 477 U.S. at 323; *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

### III. Analysis

Pursuant to 11 U.S.C. § 505 the court:

> . . . may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

11 U.S.C. § 505(a)(1). With respect to the discharge of a tax, the Bankruptcy Code provides that:

> (a) A discharge under section 727, . . . of this title does not discharge an individual debtor from any debt—
> (1) for a tax or a customs duty—
> (A) of the kind and for the periods specified in section 507(a)(3) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed; . . . .

11 U.S.C. § 523(a)(1)(A). In 11 U.S.C. § 507(a) governing priority claims and expenses, the Code provides:

> (a) The following expenses and claims have priority in the following order: . . .
> (8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for—
> (A) a tax on or measured by income or gross receipts for a taxable year ending on or before the date of the filing of the petition—
> (i)  for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;
> (ii) assessed within 240 days before the date of the filing of the petition . . . .

11 U.S.C. § 507(a)(8)(A)(i)-(ii). Therefore, taxes assessed for a taxable year ending on or before

the petition for which a return is due within the three years of the filing of the bankruptcy petition are priority expenses which are not dischargeable. In addition, taxes assessed in a timely manner within the 240-day period prior to the filing of the bankruptcy petition are entitled to priority status regardless of the tax year for which they are due. The Debtor filed bankruptcy on April 26, 2012. Therefore, the Debtor's 2009 tax liability is entitled to priority status pursuant to 11 U.S.C. § 507(a)(8)(A)(i) and is not at issue in this adversary proceeding.

Returns for tax years 2007 and 2008 were required returns to be filed by April 15, 2008 and 2009 respectively. Those dates are more than 3 years before the date the bankruptcy was filed. Taxes accruing for those years would be discharged unless the IRS made a timely assessment within 240 days before the date of filing. The Debtor asserts that the 240-day priority deadline in this proceeding was August 29, 2011.[4] The IRS admits that the 2008 tax assessment made on July 18, 2011 is not within the 240-day priority period, and is thus subject to discharge. The total tax adjustment assessed at that time was $8,320 with $1,664 in penalties. *See* [Doc. No. 19, Ex. 6]. Thus, this amount of tax assessed is beyond the 240-day priority period and is subject to discharge.

The IRS contends that the amount assessed for 2008 taxes on December 5, 2011, as well as the 2007 taxes assessed within the 240-day window prior to the filing of the Debtor's petition are entitled to priority status pursuant to Section 507(a)(8)(A)(ii). The I.R.C. provides that in general "the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed). . . ." 26 U.S.C. § 6501(a). The I.R.C. also provides for an extension of time for the assessment of a tax by agreement of the parties:

---

[4] The IRS asserts that the 240-day deadline is August 30, 2011. However, whether the deadline is August 29, 2011 or August 30, 2011 does not affect the timeliness of any of the IRS's tax assessments.

13

> **(4) Extension by agreement.—**
> **(A) In general.—** Where, before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title, . . . both the Secretary and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.

26 U.S.C. § 6501(c)(4)(A). The Debtor signed the consent form relating to his 2007 taxes on March 9, 2011, which was within the three-year period following the filing of his 2007 tax return on September 1, 2008. *See* [Doc. Nos. 19; Exs. 1, 2]. The Debtor signed the consent form relating to his 2008 taxes on June 16, 2011, which was also within the three-year period following the filing of his 2008 tax return on March 9, 2009. *See* [Doc. Nos. 19, Exs. 4-5]. Therefore, the consent forms were signed within the time period prescribed in 26 U.S.C. § 6501(c)(4)(A).

The Debtor makes two main arguments in opposition to the IRS's motion for summary judgment. The Debtor initially argues that Exhibit 1 filed by the IRS is not an actual "signed assessment document" and therefore is not sufficient to demonstrate that the actual assessment was made within the 240-day window since the alleged 2007 assessment date of September 12, 2011 is so close to the August 29, 2011 cut-off date. Next, he argues that his consent to extend the statute of limitations consented to only an "immediate" assessment of taxes, and because the IRS waited several months to assess such taxes, the tax assessment was not made timely in accordance with the consent form and should be subject to discharge.

> A. **The Sufficiency of the Account Transcripts to Demonstrate the Dates of Assessments**

The court will address the Debtor's initial argument first. The I.R.C. provides that an assessment of taxes "shall be made by recording the liability of the taxpayer in the office of the Secretary in accordance with rules or regulations prescribed by the Secretary." 26 U.S.C. § 6203.

14

The IRS regulation associated with the assessment of taxes provides:

> The district director and the director of the regional service center shall appoint one or more assessment officers. The district director shall also appoint assessment officers in a Service Center servicing his district. The assessment shall be made by an assessment officer signing the summary record of assessment. The summary record, through supporting records, shall provide identification of the taxpayer, the character of the liability assessed, the taxable period, if applicable, and the amount of the assessment. The amount of the assessment shall, in the case of tax shown on a return by the taxpayer, be the amount so shown, and in all other cases the amount of the assessment shall be the amount shown on the supporting list or record. **The date of the assessment is the date the summary record is signed by an assessment officer. . . .**

26 C.F.R. § 301.6203-1 (emphasis added).

The Debtor asserts that the evidence provided in support of the IRS's motion for summary judgment is not sufficient to demonstrate the date the IRS made its assessment. However, other courts have addressed the sufficiency of an IRS account transcript filed as evidentiary support for a motion for summary judgment and have found such a document to be sufficient to support such a motion. For example, in *De Jesus v. United States (In re De Jesus)*, the debtor argued that "[t]he document entitled 'transcript of account' does not purport to be any supporting record of the summary record of assessment, and indeed could not be that document, since it contains much data besides the data set forth, including references to dates and transactions which occurred both before and after the date of assessment." 268 B.R. 185, 194 (Bankr. D. Minn. 2001). The court responded to the debtor's argument:

> The point here is a bit obscure. Granted, the most probative evidence would have been a copy of a document actually entitled "summary record of assessment," under the Debtor's name, with the original holographic signature—if, indeed, such is even assembled in these days where public agencies must do their mass administration through electronic means. However, the document in the record is certainly sufficient to support an inference that the described administrative act was performed on the date indicated. This proffer shifted a burden of production over to the Debtor. As to this isolated but key point, the Debtor utterly failed to meet that burden.

*Id.* (citation omitted). The court found no genuine issue of material fact existed regarding the date of the IRS's tax assessment based on the IRS "transcript of account" provided in support of the IRS's motion for summary judgment.

Other courts have also found that such evidentiary support is sufficient to demonstrate no genuine issue of material fact regarding dates of an IRS tax assessment. For example, in *Hawks v. Comm'r of Internal Revenue* the Ninth Circuit found:

> [t]he tax court did not err in concluding that the appeals officer properly exercised his discretion by relying on computer-generated transcripts to determine the validity of the underlying assessment of [the taxpayer's] tax deficiency, and that the requisite notices were given.
> [The taxpayer's] general objection to the accuracy of the Internal Revenue Service's ("IRS") computerized data does not constitute evidence sufficient for a reasonable trier of fact to conclude that [the taxpayer] rebutted the presumption of correctness granted the IRS's official records.

71 F. App'x 709 (9th Cir. 2003). *See also, United States v. Thurner*, 21 F. App'x 477, 478 (7th Cir. 2001) (holding that IRS certified transcripts of account were self-authenticating); *Harnden v. U.S.A.*, No. 10-A-96039, 2011 WL 5825784, at *3 n.2 (Bankr. N.D. Ill. Nov. 17, 2011).

Further, the account transaction report of the IRS satisfies the Fed. R. Evid. 803(8) exception to hearsay for public records. Fed. R. Evid. 803(8). The records reflect the activities of the IRS with respect to this Debtor and appear to be trustworthy. *Id.* A moving party may rely on evidence in support of a motion for summary judgment that would be admissible in evidence at trial. *See e.g. Tranter v. Orick*, 460 F. App'x 513, 514-515 (6th Cir. 2012).

Based on the rulings of these courts addressing the precise issue raised by the Debtor, the court concludes that the IRS account transcripts are sufficient evidence of the date of the assessment of the Debtor's 2007 taxes and 2008 taxes. Although a signed assessment document has not been provided by the IRS, the Debtor has not produced any evidence suggesting that the IRS's account transcripts are somehow in error or do not describe the factual record of events

relating to these tax assessments. Having concluded that there is no genuine issue of fact with respect to the IRS's transcript showing September 12, 2011 and October 1, 2011 as the assessment dates, the court finds that the IRS assessed the taxes within 240 days of the filing.

      B.      **Whether the Consent Forms Required an Immediate Assessment of Taxes**

The Debtor next argues that his consent to extend the three-year statute of limitations period provided his consent only to an "immediate assessment" and not one that extended for several months. First, the court notes that the although Form 870 describes "immediate assessment," Form 872, Consent to Extend the Time to Assess Tax, provides a specific date of April 15, 2012 as a deadline by which the IRS needed to assess the Debtor's 2007 taxes. [Doc. No. 19, Ex. 2]. The Form 872 relating to the Debtor's 2008 taxes provided a deadline of April 15, 2013 by which the IRS could assess taxes. [Doc. No. 19, Ex. 5]. The Debtor signed each of these consent forms within the three-year period required by I.R.C. § 6501(c)(4)(A). Further, other courts have addressed arguments similar to the Debtor's argument here and have determined that the IRS is under no obligation to make an immediate assessment pursuant to a consent to waive statute of limitations signed by a taxpayer. For example, in *Lilly v. United States (In re Lilly)*, the bankruptcy court noted:

> . . . the Debtors contend the Service should not be allowed to delay assessment without justification. However, the plain language of § 507(a)(7)(A)(ii) does not make any exception for "unjustified" delay on the part of the Service. Nor is the Service's ability to delay assessment unlimited. The Service may not assess taxes after the statute of limitations set forth in 26 U.S.C. § 6501 has run. Accordingly, I see no reason to prohibit the Service from relying on timely assessments regardless of whether the Service could have assessed the taxes earlier.

194 B.R. 885, 888 (Bankr. D. Idaho 1996).

The Debtor has offered no evidence that the IRS affirmatively promised the Debtor that it would assess the taxes at a particular time. Without such an allegation the court cannot find there

is an issue of estoppel. *Hollenbeck v. United States Internal Revenue Serv. (In re Hollenbeck)*, 166 B.R. 291, 295 (Bankr. S.D. Tex. 1993) (elements for estoppel must include a misrepresentation by an agent of the United States; IRS made misrepresentations about particular date of assessment). The Debtor has not alleged what actions he took in reliance of the language in the form or what damages he suffered. There is no evidence before the court that the assessment dates influenced his decision about when to file his bankruptcy petition. The mere allegation that the Debtor relied on the IRS to assess the taxes immediately without more is insufficient to raise a genuine issue of material fact. Further, the Debtor has offered no legal authority imposing a statutory or regulatory obligation to act within a specific period based on the language in Form 870.

The Eleventh Circuit has noted that "[a] consent to extend the statute of limitations under Section 6501 'is essentially a voluntary, unilateral waiver of a defense by the taxpayer,' not a contract." *Feldman v. Comm'r of Internal Revenue*, 20 F.3d 1128 (11th Cir. 1994) (quoting *Strange v. United States*, 282 U.S. 270, 276 (1931)); *see also Bilski v. Comm'r of Internal Revenue*, 69 F.3d 64, 68 (5th Cir. 1995) (noting that "for purposes of bankruptcy, as for all other purposes, an 872-A is a waiver of the affirmative defense of time-bar under the statute of limitations"). The debtors extended the assessment deadlines for both years and the assessment was made before the expirations of those extensions.

In addition, "[t]ax court case law holds that 'tax' in Form 872-A includes penalties and interest." *Estate of Greenfield v. Comm'r of Internal Revenue*, 297 F. App'x 858, 862 (11th Cir. 2008) (citing *Pleasanton Gravel Co. v. Comm'r*, 85 T.C. 839, 855 (1985) and *Picard v. Comm'r*, 28 T.C. 955, 961 (1957)). The Eleventh Circuit in *Estate of Greenfield* concluded that "the tax court did not err in finding that Form 872-A constituted a waiver of the statute of limitations as

Case 1:13-ap-01092-SDR  Doc 27  Filed 05/12/14  Entered 05/12/14 15:17:08  Desc
Main Document    Page 19 of 20

to both tax and interest." *Estate of Greenfield*, 297 F. App'x at 862.

The court agrees with these authorities that the Debtor's consent to extend the time to assess taxes did not operate to establish any sort of timeframe by which the IRS had to assess such taxes, aside from the deadline provided in the forms themselves. As the IRS completed its assessments within such timeframes, the assessments were timely made pursuant to the extensions consented to by the Debtor. Therefore, the court concludes that the IRS's assessments of the 2007 and 2008 taxes made after August 29, 2011 were made within the 240-day window provided in 11 U.S.C. § 507(a)(8)(A)(ii) and are entitled to priority status pursuant to such provision and 11 U.S.C. § 523(a)(1)(A). The IRS's motion for summary judgment will be granted.

**IV.    Conclusion**

For the reasons described *supra*, the court concludes that the IRS's motion for summary judgment will be GRANTED in part and DENIED in part. As the IRS concedes that the 2008 taxes assessed on July 18, 2011 are beyond the 240-day window established by 11 U.S.C. § 507(a)(8)(A)(ii), the court concludes that those taxes are dischargeable. Those taxes for 2007 which were assessed on or about September 12, 2011 were within the extension and within 240 days of the Debtor's filing. As such they are entitled to priority under 11 U.S.C. § 507(a)(8)(A)(ii) and are not dischargeable pursuant to 11 U.S.C. § 523(a)(1)(A). The same holds for those taxes assessed on December 5, 2012 for tax year 2008.

The court will set for trial the remaining issues raised in the adversary proceeding which relate to the calculation of the amount due and violation of the discharge injunction and which were not addressed by the IRS's motion for summary judgment.

A separate order will enter.

# # #

20